[Cite as *State v. Bowerman*, 2014-Ohio-4264.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 13CA0059-M |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| GERALD BOWERMAN | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 12-CR-0456 |

DECISION AND JOURNAL ENTRY

Dated: September 29, 2014

MOORE, Judge.

{¶1} Defendant, Gerald Bowerman, appeals from the judgment of the Medina County Court of Common Pleas. We affirm.

I.

{¶2} In 2012, the Medina County Grand Jury indicted Mr. Bowerman on one count of possession of marijuana in violation of R.C. 2925.11(A)(C)(3)(e), a felony of the third degree. This charge stemmed from the controlled postal delivery of a package containing over 6,000 grams of marijuana to Mr. Bowerman's ex-girlfriend, Ayza Burden. Mr. Bowerman pleaded not guilty to the charge, and the case proceeded to a jury trial. The jury found Mr. Bowerman guilty.

{¶3} In a sentencing entry dated July 8, 2013, the trial court sentenced Mr. Bowerman to a total of twenty-four months of incarceration. Mr. Bowerman timely appealed, and he now raises four assignments of error for our review. We have re-ordered the assignments of error to facilitate our discussion.

II.

## ASSIGNMENT OF ERROR IV

THERE WAS INSUFFICIENT EVIDENCE TO CONVICT MR. BOWERMAN OF POSSESSION WHEN NO TESTIMONY WAS OFFERED TO ESTABLISH THAT HE EXERCISED DOMINION OR CONTROL OVER THE CONTROLLED SUBSTANCE.

{¶4}    In his fourth assignment of error, Mr. Bowerman argues that his conviction is not supported by sufficient evidence.  We disagree.

{¶5}    The issue of whether a conviction is supported by sufficient evidence is a question of law, which we review de novo.  *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production.  *Id.* at 390 (Cook, J. concurring).  The relevant question is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.  *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.[1] "[W]e must review the sufficiency challenge in consideration of all evidence presented by the State – whether it was properly admitted or not."  *State v. Denny*, 9th Dist. Wayne No. 08CA0051, 2009-Ohio-3925, ¶ 15, citing *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, ¶ 19, and *Lockhart v. Nelson*, 488 U.S. 33, 34 (1988).

---

[1] Mr. Bowerman also sets forth law pertaining to the manifest weight of the evidence in his discussion of his fourth assignment of error.  Because the assignment of error does not challenge the weight of the evidence, and because Mr. Bowerman has not separately argued that his conviction was against the manifest weight of the evidence, we confine our discussion to the sufficiency of the evidence.  *See State v. Brown*, 9th Dist. Summit No. 23637, 2008-Ohio-2670, ¶ 24 (an appellant's "assignment of error provides a roadmap for our review and, as such, directs our analysis of the trial court's judgment"), and App.R.12(A)(2).

{¶6}     Here, Mr. Bowerman was convicted of possession of marijuana in violation of R.C. 2925.11(A)(C)(3)(e), which provides:

> (A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.
>
> * * *
>
> (C) Whoever violates division (A) of this section is guilty of one of the following:
>
> * * *
>
> (3) If the drug involved in the violation is marihuana or a compound, mixture, preparation, or substance containing marihuana other than hashish, whoever violates division (A) of this section is guilty of possession of marihuana.  The penalty for the offense shall be determined as follows:
>
> * * *
>
> (e) If the amount of the drug involved equals or exceeds five thousand grams but is less than twenty thousand grams, possession of marihuana is a felony of the third degree, and there is a presumption that a prison term shall be imposed for the offense.

{¶7}     Here, the State proceeded on a theory that Mr. Bowerman obtained or constructively possessed the marijuana at issue.  "[A] person may knowingly possess a substance or object through either actual or constructive possession."  *State v. Reeves*, 9th Dist. Summit No. 26984, 2014-Ohio-282, ¶ 11, quoting *State v. Hilton*, 9th Dist. Summit No. 21624, 2004-Ohio-1418, ¶ 16.  "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate possession."  *State v. Gilbert*, 9th Dist. Medina No. 11CA0076-M, 2012-Ohio-4090, ¶ 10, quoting *State v. Wolery*, 46 Ohio St.2d 316, 329 (1976).  "Circumstantial evidence is sufficient to support the elements of constructive possession."  *State v. Amodio*, 9th Dist. Medina No. 11CA0048-M, 2012-Ohio-2682, ¶ 16, quoting *State v. Williams*, 9th Dist. Summit No. 25286, 2011-Ohio-4488, ¶ 7. "Some facts standing alone, such as access to drugs, are insufficient to establish constructive

possession on their own, but when viewed together, these factors may constitute circumstantial evidence that demonstrates constructive possession." *State v. Mack*, 9th Dist. Summit No. 26859, 2014-Ohio-1387, ¶ 9, citing *State v. Woods*, 9th Dist. Wayne No. 07CA0067, 2008-Ohio-1468, ¶ 7, citing *State v. Owens*, 9th Dist. Summit No. 23267, 2007-Ohio-49, ¶ 23. "[T]he crucial issue is not whether the accused had actual physical contact with the article concerned, but whether the accused was capable of exercising dominion [and] control over it." *Amodio* at ¶ 16, quoting *State v. Graves*, 9th Dist. Lorain No. 08CA009397, 2011-Ohio-5997, ¶ 15, quoting *State v. Ruby*, 149 Ohio App.3d 541, 2002-Ohio-5381, ¶ 30 (2d Dist.).

{¶8} In its case-in-chief, the State produced the testimony of Ms. Burden, and of law enforcement officers. Ms. Burden testified that she lived with Mr. Bowerman at an apartment on Bennington Boulevard on the date at issue. They lived there with another couple named Jesse and Kelly. Mr. Bowerman made his living selling marijuana. Through a discussion with Mr. Bowerman, Ms. Burden learned that a package containing marijuana was going to be delivered to their apartment from Mr. Bowerman's drug contacts. Mr. Bowerman needed someone to accept the package, which was scheduled to arrive on July 25, 2012, and, because Ms. Burden had no prior convictions and would face a lesser sentence if caught, she agreed to receive the package. The package did not arrive on July 25, 2012 as scheduled, and Mr. Bowerman seemed worried over this. However, at some point, Mr. Bowerman informed Ms. Burden that she would receive the package the next day.

{¶9} Law enforcement officers testified that the postal service notified the Medina County Drug Task Force that the postal service had intercepted a package pursuant to the terms of a federal search warrant, which was addressed to the Bennington Boulevard address. The officers obtained names and photo identification pictures of potential residents of the Bennington

Boulevard address, including Ms. Burden and Mr. Bowerman, who had recently provided the address as their home address during a traffic stop. Law enforcement officers then planned a controlled delivery of the package to the address for July 26, 2012, and they obtained an anticipatory search warrant for the address, conditioned on someone accepting the package. Prior to the delivery, the officers set up surveillance in the parking lot and perimeter of the apartment complex and arranged for an agent to pose as the postal carrier and deliver the package.

{¶10} Ms. Burden testified that, on July 26, 2012, prior to the package arriving, Mr. Bowerman and another individual named Jen, left the apartment to walk through the parking lot to see if there were any police officers located there. He left a phone for Ms. Burden that had a picture of a penguin on it, and he took another phone with him. The package arrived, and Ms. Burden signed for it and placed it on the couch. She spoke with Mr. Bowerman on the telephone and told him that she had received the package. He then called her back and told her to get out because it was "all bad." She and Jesse then ran out of the back door of the apartment, and Ms. Burden took the penguin phone with her. Ms. Burden was shortly thereafter apprehended by law enforcement officers.

{¶11} Officer Thomas Carrell of the Medina County Drug Task Force testified that he was assigned to sit in an unmarked car in the parking lot during the delivery. While seated in the parking lot, the officer saw who he recognized from the officers' earlier briefing as Mr. Bowerman walking through the parking lot, talking on a cell phone. When Mr. Bowerman reached another car in which a detective was seated, Mr. Bowerman spontaneously started to run.

{¶12} Agent Eric Bohrs of the Medina County Drug Task Force testified that he was assigned to cover the perimeter during the delivery. While doing so, he learned that Mr. Bowerman had fled the scene on foot, and the agent began searching for him in the nearby area. He located Mr. Bowerman behind a nearby business and apprehended him. On Mr. Bowerman's person was a satchel that contained, among other items, two cellular telephones and Mr. Bowerman's identification.

{¶13} Agent Daren Stout of the Medina County Drug Task Force testified that the package was recovered from the Bennington Boulevard apartment and was sent to the Ohio Bureau of Criminal Identification ("BCI") for processing, and the parties stipulated to the authenticity of a BCI report indicating that the package contained 6,373 grams of marijuana. Further, Agent Stout testified that he obtained telephone records for the two telephones found with Mr. Bowerman, one of which depicted a picture of Batman on it, and the penguin telephone found on Ms. Burden. On the Batman phone, there were four telephone calls made the afternoon of July 25, 2012, to the tracking hotline for the United States Postal Service. On July 26, 2012, the call records indicated a fifty-four second call between the Batman phone and the penguin phone around the time of the controlled delivery. Ms. Burden testified that all three of the phones belonged to Mr. Bowerman.

{¶14} Based upon the foregoing, when viewed in a light most favorable to the State, a reasonable juror could conclude that Mr. Bowerman knowingly arranged the delivery and acceptance of the package of marijuana, and, in doing so, exercised dominion and control over the package, and thus he constructively possessed the marijuana for purposes of R.C. 2925.11. *See Amodio*, 2012-Ohio-2682, at ¶ 16. Accordingly, Mr. Bowerman's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE STATE OF OHIO, BY AND THROUGH THE MEDINA COUNTY PROSECUTOR'S OFFICE, COMMITTED PROSECUTORIAL MISCONDUCT BY PERVASIVE LEADING OF THE WITNESSES AND BELITTLING OF [MR. BOWERMAN] AND DEFENSE COUNSEL; BY STATING [MR. BOWERMAN] HAD DUTY TO EXPLAIN/ PRODUCE DEFENSE[,] BY IMPERMISSIBLY BOLSTERING STATE'S WITNESSES.

{¶15} In his second assignment of error, Mr. Bowerman argues that the State engaged in prosecutorial misconduct necessitating reversal of his conviction. We disagree.

{¶16} First, Mr. Bowerman maintains that the prosecutor impermissibly led the State's witnesses during direct examination.[2] Mr. Bowerman has also argued that the prosecutor committed prosecutorial misconduct during closing arguments by making derogatory and demeaning comments toward Mr. Bowerman, and by attempting to bolster the credibility of Officer Carrell by suggesting in closing argument that, if the jury disbelieved his testimony, it would be tantamount to calling him a liar. However, trial counsel failed to object to the State's leading questions, to the purported demeaning and derogatory comments made during closing, or to the comment pertaining to Officer Carrell. Therefore, as to these questions and comments, Mr. Bowerman has forfeited all but plain error review on appeal. *See State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, ¶ 242. Although in his third assignment of error, Mr. Bowerman acknowledges that defense counsel failed to object to the leading questions and to certain comments relating to Mr. Bowerman, resulting in forfeiture, Mr. Bowerman fails to make a plain error argument in regard to these questions and comments in his second assignment of error. Therefore, although a party who forfeits such an argument still may argue plain error on appeal,

---

[2] Mr. Bowerman also cites case law pertaining to the cumulative error doctrine in his second assignment of error. However, as Mr. Bowerman has not separately argued cumulative error, we will limit our discussion to prosecutorial misconduct as stated in the assignment of error. *See Brown*, 2008-Ohio-2670, at ¶ 24, and App.R. 12(A)(2).

we decline to undertake a plain error analysis on Mr. Bowerman's behalf. *See Hendy v. Wright*, 9th Dist. Summit No. 26422, 2013-Ohio-5786, ¶ 14, quoting *State v. Cross*, 9th Dist. Summit No. 25487, 2011-Ohio-3250, ¶ 41, citing *State v. Hairston*, 9th Dist. Lorain No. 05CA008768, 2006-Ohio-4925, ¶ 11.

{¶17} Mr. Bowerman further maintains that the prosecutor engaged in prosecutorial misconduct during closing arguments by making comments to which the defense's objections were overruled. In regard to allegedly improper remarks made by a prosecutor in closing arguments, "the test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *State v. Frazier*, 73 Ohio St.3d 323, 341 (1995), quoting *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). "Parties are granted latitude in closing arguments, and the question as to the propriety of these arguments is generally considered one falling within the sound discretion of the trial court." *Frazier* at 341, quoting *State v. Loza*, 71 Ohio St.3d 61, 78 (1994). An abuse of discretion connotes that a trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶18} Here, Mr. Bowerman argues that the prosecutor, during closing argument, twice improperly implied that Mr. Bowerman had a duty to explain his defense. First, the State referenced letters that Ms. Burden acknowledged on cross-examination that she had written, wherein she maintained that the fault for the package was hers and that Mr. Bowerman had done nothing wrong. The State argued:

[THE STATE]: * * *

He asked her, "isn't it true that you sent letters to him that said it's all mine, I'm going to take responsibility, you didn't do anything," and she said she did by the way.

[Defense counsel] never offered any of those, for whatever reason didn't offer any of those letters and I don't know if there was some things in there that he didn't want you to see. I don't know why.

[DEFENSE COUNSEL]: Objection.

THE COURT: Basis?

[DEFENSE COUNSEL]: Well, it's not in evidence any reason why I might not have offered those in to evidence. He shouldn't be able to speculate on that.

THE COURT: Its overruled.

 * * *

{¶19}  During the defense's closing argument, the defense indicated that Agent Carrell's identification of Mr. Bowerman in the parking lot was not credible because of their respective positions. During the State's rebuttal argument, it maintained:

[THE STATE]: * * *

* * * [Y]ou have to believe that Agent Carrell is either an idiot or a liar than to accept that he didn't see Mr. Bowerman and that Mr. Bowerman ran and somehow miraculously I don't know what he was doing for the last 10 minutes or 20 minutes, right?

Did he just go on his own with his phones and his laptop for a picnic in the woods? I mean, is that it? I mean, if you're going to ask the jury to choke down this bologna cheese sandwich with Swiss cheese, you've got to explain what type of picnic he was –

[DEFENSE COUNSEL]: Objection.

[THE STATE]: – having in the woods.

[DEFENSE COUNSEL]: Objection. I don't have any burden to explain anything.

THE COURT: Overruled.

[THE STATE]: That is what he told you. That's his argument and I'm rebutting it, Ladies and Gentlemen, and I'd like to know and then you can decide. You can infer from it.

He's in the woods, in the wood line looking around. I'd like to know, is that a picnic over there or did he just flee and you're trying to get away?

* * *

{¶20} Mr. Bowerman further argues that the State committed prosecutorial misconduct by referencing other cases not in evidence and by demeaning defense counsel when making the following statement during closing:

[THE STATE]: * * *

I mean, [defense counsel] jumping around here like he just – like he's just exposed Watergate or something or just uncovered some crime that occurred between the State and the witness, give me a break, Ladies and Gentlemen. That was all put on the record. I put it on the record when she testified and it happens every day. Open up the newspaper, Ladies and Gentlemen. You get to decide –

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

{¶21} Assuming without deciding that the first two above statements by the State improperly suggested that the defense had a duty to put on evidence or that Mr. Bowerman had a duty to testify, we note that the trial court instructed the jury that the State had the burden of proving the elements of the crime beyond a reasonable doubt and that no inference should be drawn from Mr. Bowerman not testifying. "In the absence of evidence to the contrary, we presume that the jury followed the trial court's instructions[.]" *State v. Ha*, 9th Dist. Medina No. 07CA0089-M, 2009-Ohio-1134, ¶ 48, citing *State v. Manns*, 169 Ohio App.3d 687, 2006-Ohio-5802, ¶ 93 (2d Dist.). We are not persuaded here, in the absence of any other evidence, that the first two statements above were of such a nature as to cause the jury to disregard the trial court's directions.

{¶22} In regard to the third excerpt quoted above, we note that this excerpt from rebuttal argument, when taken in context, demonstrates the State was responding to the defense's emphatic argument in closing that the State had "bought and paid for" Ms. Burden's testimony because she agreed to testify in exchange for a reduction in the charges against her. Further,

although the State alludes to co-defendants frequently testifying against other co-defendants as a condition of plea agreements, the State does not reference any other cases or items not in evidence, and, instead appears to be appealing to the common knowledge of the jurors. Therefore, we are not convinced that the trial court abused its discretion in determining that the third excerpt did not exceed the latitude given to parties during closing arguments.

{¶23} Moreover, as to all of the excerpts, Mr. Bowerman appears to rely on this Court's decision in *State v. Labriola*, 9th Dist. Medina No. 12CA0030-M, 2013-Ohio-2604, in arguing that the transcript of the present case "reveal[s] the exact trend that earned reversal" in *Labriola* because of prosecutorial misconduct. In *Labriola* at ¶ 32, we concluded that the State's "repeated comments about [Mr.] Labriola's untruthfulness crossed the line into impropriety," and that its "egregious misconduct prejudicially affected [Mr.] Labriola's substantial rights so as to deprive him of a fair trial." However, here, even were we to conclude that the statements set forth in the preserved arguments above were improper, we could not conclude that they rose to such a level as to prejudicially affect Mr. Bowerman's substantial rights.

{¶24} Accordingly, Mr. Bowerman's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

MR. BOWERMAN WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BY THE LACK OF ANY DEFENSE OBJECTIONS TO THE STATE'S MISCONDUCT AND PROPER PRESERVATION OF THE APPELLATE RECORD.

{¶25} In his third assignment of error, Mr. Bowerman argues that defense counsel was ineffective for failing to object to the State's use of leading questions on direct examination and to the State's references to Mr. Bowerman as "Gerald Vegas Bowerman" during closing arguments. We disagree.

{¶26} This Court must analyze claims of ineffective assistance of counsel under a standard of objective reasonableness. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 142 (1989). Under this standard, a defendant must show (1) deficiency in the performance of counsel "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) that the errors made by counsel were "so serious as to deprive the defendant of a fair trial[.]" *Strickland* at 687. A defendant must demonstrate prejudice by showing that, but for counsel's errors, there is a reasonable probability that the outcome of the trial would have been different. *Id.* at 694. In applying this test, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689. This Court need not address both prongs of *Strickland* where an appellant fails to prove either prong. *See State v. Ray*, 9th Dist. Summit No. 22459, 2005-Ohio-4941, ¶ 10.

{¶27} Here, Mr. Bowerman maintains that defense counsel was deficient for failing to object to the prosecutor's leading questions and to statements made by the prosecutor during closing statements wherein he referred to Mr. Bowerman as "Gerald Vegas Bowerman." In regard to the leading questions, "in *State v. Jackson*, 92 Ohio St.3d 436, 449 (2001), the Ohio Supreme Court held that, because 'it is within the trial court's discretion to allow leading questions[,] * * * the failure to object to any leading questions [does not] constitute[ ] ineffective assistance of counsel.'" *State v. Kiley*, 9th Dist. Lorain No. 10CA009757, 2011-Ohio-1156, ¶ 4. "Accordingly, Mr. [Bowerman]'s lawyer was not ineffective for not objecting to the prosecutor's leading questions." *Id.*, citing *State v. Fisher*, 9th Dist. Summit No. 24116, 2009-Ohio-332, ¶ 25. In regard to the State's references to Mr. Bowerman as "Gerald Vegas Bowerman" during closing argument, Ms. Burden testified that Mr. Bowerman's nickname was Vegas. While it is

more appropriate for counsel to refer to a defendant in a criminal proceeding by his or her given name, we cannot conclude that Mr. Bowerman's attorney was deficient in failing to object to the State's use of Mr. Bowerman's nickname during its closing argument.

**{¶28}** Further, Mr. Bowerman makes no argument as to whether there is a reasonable probability that the outcome of the trial would have been different but for counsel's purported errors, and we decline to construct a prejudice argument on Mr. Bowerman's behalf. *Strickland* at 694; App.R. 16(A)(7).

**{¶29}** Accordingly, Mr. Bowerman's third assignment of error is overruled.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT IMPROPERLY APPLIED R.C. 2945.74 AND INTERFERED WITH THE DUE PROCESS RIGHT TO PRESENT A DEFENSE BY INCLUDING A LESSER OFFENSE OF THE INDICTED CHARGE IN JURY INSTRUCTIONS SUA SPONTE.

**{¶30}** In his first assignment of error, Mr. Bowerman appears to argue that the trial court erred in instructing the jury on a lesser included offense.

**{¶31}** During its instructions to the jury, the trial court instructed the jury on the lesser included offense of attempted possession of marijuana. *See* R.C. 2945.74 and Crim.R. 31. However, Mr. Bowerman was not convicted of the lesser included offense of attempted possession of marijuana. Instead, he was convicted of possession of marijuana as charged in the indictment. Therefore, "our discussion of the propriety of the jury instruction would be merely advisory and not outcome determinative." *State v. Wine*, 3d Dist. Auglaize No. 2-12-01, 2012-Ohio-2837, ¶ 17. Accordingly, we decline to address this argument, and Mr. Bowerman's first assignment of error is overruled.

III.

**{¶32}** Mr. Bowerman's assignments of error are overruled.  The judgment of the trial court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CARLA MOORE
FOR THE COURT

CARR, P. J.
WHITMORE, J.
CONCUR.

APPEARANCES:

SARAH MARGARET HULBURT, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW A. KERN, Assistant Prosecuting Attorney, for Appellee.